**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNDER ARMOUR, INC.** | ) | |
| 1020 Hull Street | ) | |
| Baltimore, Maryland 21230, | ) | Civil Action No.  1:21-cv-2045 |
| | ) | |
| Plaintiff, | ) | **JURY TRIAL** |
| | ) | **DEMANDED** |
| v. | ) | |
| | ) | |
| **MOUNTAIN ARMOR, LLC** | ) | |
| 305 South Colorado Avenue | ) | |
| Laramie, Wyoming 82070, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMPLAINT**

Plaintiff Under Armour, Inc. alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters:

**NATURE OF THIS ACTION**

1.      This is a civil action for trademark infringement, trademark dilution, and unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and trademark infringement and unfair competition under Maryland statutory and common law.  Under Armour seeks equitable and monetary relief from Defendant's willful violations of Under Armour's trademark rights in its famous UNDER ARMOUR mark, ARMOUR mark, and other ARMOUR-formative marks (the "ARMOUR Marks").

2.      Defendant has been offering for sale, selling, and promoting apparel, including hats and t-shirts, under the MOUNTAIN ARMOR mark—which misappropriates the core of Under Armour's branding and violates Under Armour's trademark rights in multiple ways.  As a result of Defendant's use of MOUNTAIN ARMOR in connection with its apparel products,

1

consumers are likely to confuse them with Under Armour.  Under Armour has tried to resolve

this matter numerous times, but Defendant does not appear interested.

## PARTIES

3.      Plaintiff Under Armour is a Maryland corporation with a principal place of

business at 1020 Hull Street, Baltimore, Maryland 21230.

4.      Defendant Mountain Armor, LLC is limited liability company with an address at

305 South Colorado Avenue, Laramie, Wyoming 82070.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 15

U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b).  Because Under Armour is a citizen of

the State of Maryland, Defendant is a citizen of the State of Wyoming, and the matter in

controversy exceeds $75,000 exclusive of interests and costs, the Court also has jurisdiction

under 28 U.S.C. § 1332.  The Court has supplemental jurisdiction over Under Armour's state-

law claims pursuant to 28 U.S.C. § 1367(a) because they are substantially related to its federal

claims and arise out of the same case or controversy.

6.      This Court has specific personal jurisdiction over Defendant because Defendant

purposefully availed itself of the privilege of conducting business in Maryland.  Defendant

offers, markets, and promotes its products bearing the MOUNTAIN ARMOR mark through its

website and other means to consumers located in Maryland and elsewhere and uses that mark to

promote and advertise its products in Maryland and elsewhere.

7.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b) and (c) because a

substantial part of the events giving rise to Under Armour's claims have occurred and are

continuing to occur in this District, and Under Armour's trademarks at issue are located in this District, where Under Armour maintains its principal place of business.

## UNDER ARMOUR, ITS PRODUCTS, AND ITS ARMOUR TRADEMARKS

8.     Under Armour is one of the world's most successful, popular, and well-known providers of apparel, footwear, sporting goods, and accessories.  Through Under Armour's innovative use of advanced engineering and technology, it has revolutionized the performance-product industry.  In 2020 alone, Under Armour sold over $4.5 billion worth of products.

9.     Since at least as early as 1996, Under Armour has continuously used and promoted (through itself, its predecessor in interest, and its licensees) the UNDER ARMOUR name/mark for apparel.

10.     Over the years, Under Armour has expanded to a wide range of other products and services, including a full line of men's and women's athletic clothing, footwear, headwear, and accessories; workwear; tactical wear; bags; and sports equipment.  The distinctive UNDER ARMOUR name/mark has been used and promoted across Under Armour's extensive product line.

11.     In addition to its UNDER ARMOUR name/mark, Under Armour has used and promoted the ARMOUR mark alone and numerous other ARMOUR-formative marks in connection with its wide range of products and services including GAMEDAY ARMOUR, BABY ARMOUR, OFFSHORE ARMOUR, SUN ARMOUR, ARMOUR BRA, ARMOUR STRETCH, ARMOUR GRABTACK, ARMOUR FLEECE, ARMOUR SELECT, ARMOR ELITE, ARMOUR ACCESS, ARMOURBLOCK, ARMOURSTORM, ARMOURLOFT, ARMOURGRIP, ARMOURSIGHT, ARMOURSTEALTH, ARMOURBOX, and MY ARMOUR, among others.  These ARMOUR-formative marks have been used and promoted

individually and/or together, and consumers have come to associate the ARMOUR portion of the marks with UNDER ARMOUR.

12.     Among its numerous products, Under Armour has for years offered a variety of apparel, including hats and t-shirts, under its ARMOUR Marks *e.g.*:







Men / Tops

## Men's UA HeatGear® Armour Short Sleeve Compression Shirt

$20.99 - $30.00                            ★★★★½  4.6 (558)

Carbon Heather / Black - 090

REGULAR    TALL

Size & Fit Guide

LGT    XLT    XXLT    3XLT    4XLT

Find Your True Fit Size

Qty
1

Add to Bag        PayPal

**What's it do?**

HeatGear® Armour is our original men's hot weather compression shirt—the layer you put on first and take off last. It's tight to wick away sweat and quick-drying to keep you cool. No athlete can go without it.

DNA        Specs        Fit & Care



Outlet / UA Special Offers

## Men's UA Freedom Flag T-Shirt

$25.00   $18.75                            ☆☆☆☆☆  (0)

Limited Time Only

Black / Steeltown Gold - 003

REGULAR    TALL

SM    MD    LG    XL    XXL

3XL    4XL

Find Your True Fit Size

Qty
1

Add to Bag        PayPal



5



### UA Be Seen Terry Crop

★★★☆☆  1  |  Live Chat  |  Style #1341560
$54.99   ~~$70.00~~

Color: Tectonic Tan - 202

Please select a size                    Size Chart

XS   SM   MD   LG   XL

Find Your True Fit Size

Qty
1

ADD TO BAG

PayPal Checkout

SEND AS A GIFT

Pickup Store
Harbor East  |  Change
Select a color and size to view availability

Model is 5'9"
wearing size Small



Best Seller



Men / Bottoms

### Men's HeatGear® Armour Mid Compression Shorts

~~$27.99~~  $21.99              ★★★★☆  4.2 (136)

Carbon Heather / Black - 090

REGULAR   TALL

Size & Fit Guide

SM   MD   LG   XL   XXL

3XL

Qty
1

Add to Bag

PayPal




### UNDER ARMOUR'S SALES AND
### PROMOTION OF ITS ARMOUR-BRANDED PRODUCTS

13.    Under Armour has sold billions of dollars worth of products under the UNDER ARMOUR and ARMOUR Marks, which are promoted, offered, and sold nationwide through a wide variety of retail means, including thousands of retail stores.  These include Under Armour's own Factory and Brand House retail stores, as well as national, regional, independent, and specialty retailers such as *Foot Locker*, *Finish Line*, *Dick's Sporting Goods*, *Kohl's*, *Macy's*, *Dunham's*, *Modell's*, *Hibbett Sports*, *Nordstrom*, *Academy Sports & Outdoors*, *Bass Pro Shops*, *Cabela's,* and *The Army and Air Force Exchange Service.*

14.    Under Armour's products are also offered, sold, and promoted through its own websites, catalogs, and toll-free call center and the websites and mail order catalogs of many of its retailers, including the websites used by *Bloomingdales.com*, *Cabela's*, *Bass Pro Shops*, *City Sports*, *Dick's Sporting Goods*, *Eastbay*, *Eastern Mountain Sports*, *Finish Line*, *Foot Locker*,

*Gilt Groupe*, *Hibbett*, *Kohl's*, *LL Bean*, *Lord & Taylor*, *Macys.com*, *MC Sports*, *Modell's*, *Nordstrom*, *Sportsman's Guide*, and *Sportsman's Warehouse*.

15.     For years, Under Armour has spent tens of millions of dollars annually advertising and promoting its ARMOUR Marks and products to the general public.  Under Armour has done so, widely and extensively, through virtually every available type of media, including print publications, signage, television, and the Internet.

16.     Under Armour also promotes and showcases its ARMOUR Marks and products on its own and authorized websites and social media sites, including www.underarmour.com, www.facebook.com/underarmour, www.twitter.com/underarmour, and www.instagram.com/underarmour, among others.

17.     Under Armour has run extensive, nationwide advertising campaigns that reinforce the ARMOUR Marks as a potent shorthand for Under Armour and its vast product offerings— for example the THIS IS YOUR ARMOUR, EARN YOUR ARMOUR, ARMOUR UP, YOUR ARMOUR JUST GOT LIGHTER, and UNDER THE ARMOUR campaigns:












18.     With respect to publications and signage, Under Armour has advertised and
promoted its ARMOUR Marks and products in a wide variety of nationally circulated magazines
and newspapers.

19.     Further, the ARMOUR Marks have been featured on billboards and other signage
in various cities, including Baltimore, Philadelphia, and New York City's Times Square.

9

20.     Under Armour has advertised and promoted its ARMOUR Marks and products through television commercials, including a television commercial during the Super Bowl; product placement in popular movies, national television programs, and video games; and coverage of sporting events featuring its branded products, among other means.

21.     Sponsorships, outfitting agreements, individual athlete agreements, and partnerships with famous celebrities represent another significant form of advertising and promotion.  Under Armour's ARMOUR Marks have been promoted through high-profile athletes and teams at the youth, collegiate, professional, and Olympic levels including, for example, the most decorated Olympian of all time Michael Phelps; World Champion ski racer Lindsey Vonn; ballerina Misty Copeland; NBA basketball stars Steph Curry (Golden State Warriors) and Joel Embiid (Philadelphia 76ers); MLB baseball stars Bryce Harper (Philadelphia Phillies) and Buster Posey (San Francisco Giants); NFL football stars Tom Brady (Tampa Bay Buccaneers), Cam Newton, and Patrick Peterson (Arizona Cardinals); supermodel Giesele Bündchen; famous celebrity Dwayne "The Rock" Johnson; college sports teams such as Auburn, Notre Dame, Boston College, University of Maryland, Northwestern University, Navy, and South Carolina; and high school sports teams around the country.













22.     Since 2006, Under Armour has been an authorized supplier of footwear to the NFL and is currently also an official performance footwear supplier to the MLB and authorized supplier of gloves to the NFL.

23.     In addition to its own substantial advertising and promotional activities, Under Armour and its ARMOUR Marks and products have received and continue to receive widespread unsolicited media coverage.  Indeed, many of the athletes, teams, and sporting events sponsored by Under Armour appear on nationally broadcast television programs and in widely circulated publications, exposing tens of millions of consumers to the ARMOUR Marks.

12

24.     Under Armour has received numerous awards for its commercial success in connection with the development of its innovative and technologically enhanced products and its marketing and branding achievements.  In 2014, Under Armour received the prestigious "Marketer of the Year" Award from *Advertising Age* magazine.  That same year, *Yahoo Finance* named Under Armour the 2014 "Company of the Year."  In 2015 and 2016, Under Armour ranked #4 (with a brand value of $5 billion in 2015 and $5.5 billion in 2016) on the Forbes list of "The World's Most Valuable Sports Brands."  In 2016, Under Armour also received the preeminent marketing industry award for the best "Ad of the Year" from *AdWeek* for its "Rule Yourself" campaign featuring 28-time Olympic medalist Michael Phelps.

25.     As a result of its distinctive nature, and thus inherent strength; widespread advertising, publicity, promotion, and sales; and longstanding and extensive use and recognition, the UNDER ARMOUR mark has been well known and famous for years.

26.     In *Under Armour, Inc. v. Exclusive Innovations, Inc.*, No. SAG-20-03427 (D. Md. May 21, 2021), this Court noted that "Under Armour's marks are famous in the United States due to its national advertising, celebrity sponsorships, and the number of in person and online retail locations."  Similarly, in *Under Armour, Inc. v. Bode*, Opp. No. 91178653 (TTAB May 21, 2009), the Trademark Trial and Appeal Board of the United States Patent and Trademark Office (PTO) expressly acknowledged the fame of the UNDER ARMOUR mark.

## UNDER ARMOUR'S TRADEMARK REGISTRATIONS FOR ITS ARMOUR MARKS

27.     Under Armour owns, among others, the following valid and subsisting U.S. federal trademark registrations for its UNDER ARMOUR marks (true and correct copies of which are attached as Exhibit A):

| Mark | Reg. No.<br>Reg. Date | Goods/Services |
|---|---|---|
| UNDER ARMOUR | 2279668<br>09-21-1999 | Clothing, namely, t-shirts, long sleeve shirts, mock turtle necks, hats, shorts, shirts, leggings, jersey's, pants, headwear for winter and summer, under wear, tank tops (male and female), winter caps, sweat shirts/pull overs, women's bra in Class 25 |
| UNDER ARMOUR | 2917039<br>01-11-2005 | Wristbands, headbands, rain suits, jackets, socks, skirts, athletic sleeves, hoods, skull wraps, skull caps, vests, hats, shorts, shirts, leggings, pants, headwear for winter and summer, underwear, tank tops, bras, girdles in Class 25 |
| UNDER ARMOUR | 3178549<br>11-28-2006 | Athletic footwear in Class 25 |
| UNDER ARMOUR | 3642614<br>06-23-2009 | Full line of athletic clothing in Class 25 |
| UNDER ARMOUR | 3712052<br>11-17-2009 | Ankle socks; athletic uniforms; baseball caps; baseball shoes; baseball uniforms; baselayer bottoms; baselayer tops; beach footwear; boxer briefs; boxer shorts; briefs; capri pants; children's headwear; coats; dresses; fleece pullovers; football shoes; footwear; foul weather gear; golf caps; golf shirts; golf trousers; hooded pullovers; hunting vests; jogging pants; knit shirts; men's socks; mittens; moisture-wicking sports bras; moisture-wicking sports pants; moisture-wicking sports shirts; polo shirts; rain jackets; rain trousers; rainproof jackets; rainwear; running shoes; short-sleeved or long-sleeved t-shirts; short-sleeved shirts; ski bibs; ski gloves; ski jackets; ski pants; ski wear; skorts; sleeveless jerseys; snow pants; snowboard gloves; snowboard mittens; snowboard pants; soccer boots; sport shirts; sports bras; sports jerseys; sports pants; sports shirts; sweat bands; sweat pants; tennis wear; thongs; thongs; training shoes; undershirts; visors; waterproof jackets and pants; wind pants; wind resistant jackets; wind shirts in Class 25 |
| UNDER ARMOUR | 4225998<br>10-16-2012 | Baseball shoes; Basketball sneakers; Beachwear; Bib overalls for hunting; Camouflage gloves; Camouflage jackets; Camouflage pants; Camouflage shirts; Camouflage vests; Cleats for attachment to sports shoes; Fishing shirts; Football shoes; Golf shorts; Hunting jackets; Hunting pants; Hunting shirts; Sneakers; Swimwear; Volleyball jerseys; Yoga pants; Yoga shirts in Class 25 |

| Mark | Reg. No. Reg. Date | Goods/Services |
|---|---|---|
| UNDER ARMOUR | 3700135 10-20-2009 | Clothing for athletic use, namely, padded shirts, padded pants, padded shorts, padded elbow compression sleeves in Class 25<br><br>Bags specially adapted for sports equipment; golf gloves; batting gloves; football gloves; lacrosse gloves; mouth guards for athletic use; cases for holding athletic mouth guards; athletic equipment, namely, guards for the lips; chin pads for athletic use; knee pads for athletic use; elbow pads for athletic use; forearm pads for athletic use; shin guards for athletic use; football girdles in Class 28 |
| UNDER ARMOUR | 3722377 12-08-2009 | Football towels; golf towels; towels in Class 24 |
| UNDER ARMOUR | 3500322 09-09-2008 | Eyewear, namely, sunglasses, lenses for sunglasses, and visors for use with helmets in Class 9 |
| UNDER ARMOUR | 4135826 05-01-2012 | Eyewear; goggles for sports in Class 9 |
| UNDER ARMOUR | 3901624 01-04-2011 | Backpacks specially adapted for holding laptop computers in Class 9 |
| UNDER ARMOUR | 3375771 01-29-2008 | Retail store services featuring apparel and sporting goods in Class 35 |
| UNDER ARMOUR | 3638277 06-16-2009 | Online retail store services featuring apparel, footwear, sporting goods, eyewear, headwear, wrist bands, sweat bands, belts, gloves, hand-warmers, plastic water bottles sold empty, sports bags, tote bags, travel bags, backpacks, messenger bags, duffel bags, wheeled bags, sling bags, umbrellas, towels in Class 35 |

28.     Under Armour also owns, among others, the following valid and subsisting U.S. trademark registrations for the ARMOUR mark *per se* and other ARMOUR-formative marks, including for clothing, footwear, accessories, and other products (true and correct copies of which are attached as Exhibit B):

| Mark | Reg. No. Reg. Date | Goods/Services |
|---|---|---|
| ARMOUR | 3392904 03-04-2008 | Clothing, excluding golf clothing, namely, shorts, shirts, pants, and gloves in Class 25 |

| Mark | Reg. No.<br>Reg. Date | Goods/Services |
|---|---|---|
| ARMOUR | 3970978<br>05-31-2011 | Footwear, excluding golf footwear in Class 25 |
| ARMOUR | 3720012<br>12-01-2009 | Clothing, excluding golf clothing, namely, hooded sweat shirts, crew neck shirts, long sleeve shirts, pullover shirts in Class 25 |
| ARMOUR | 4133248<br>04-24-2012 | Clothing, excluding golf clothing, namely, headwear, hats, caps, baseball caps and bras in Class 25 |
| ARMOUR | 5387620<br>01-23-2018 | On-line retail store services featuring apparel, footwear, headwear, eyewear, and sporting goods; and retail store services featuring apparel, footwear, headwear, eyewear, and sporting goods in Class 35 |
| ARMOUR FLEECE | 3510702<br>10-07-2008 | Jackets, pants in Class 25 |
| GAMEDAY ARMOUR | 4094318<br>01-31-2012 | Clothing, namely, shirts, t-shirts, short-sleeved shirts, shorts; clothing for athletic use, namely, padded shorts; clothing for athletic use, namely, padded shirts in Class 25 |
| ARMOURVENT | 4642057<br>11-18-2014 | Athletic shirts; athletic shorts; baselayer bottoms; baselayer tops; bottoms; capri pants; capris; caps; compression garments for athletic or other non-medical use, namely, shirts, shorts; hats; headwear; jackets; leggings; long-sleeved shirts; shirts; short-sleeved shirts; shorts; sports shirts; t-shirts; tank tops; tank-tops; tops; track jackets; in Class 25 |
| ARMOUR BRA | 4142942<br>05-15-2012 | Bras in Class 25 |
| ARMOUR GRABTACK | 3684393<br>09-15-2009 | Football gloves in Class 28 |

29.     Under Armour also owns the following valid and subsisting Maryland trademark registrations for its famous ARMOUR mark, among others (true and correct copies of which are attached as Exhibit C):

| Mark | Reg. No. | Reg. Date | Products/Services |
|---|---|---|---|
| ARMOUR | 2012-0227 | 12/18/12 | Clothing, excluding golf clothing in Class 39 |
| ARMOUR | 2012-0228 | 12/18/12 | Knee pads for athletic use and protective athletic cups in Class 22 |

## DEFENDANT AND ITS WRONGFUL ACTIVITIES

30.    Defendant is in the business of fabricating parts (including bumpers) for motorized snow vehicles, which it offers under the MOUNTAIN ARMOR mark, and to which Under Armour has no objection.

31.    Defendant, however, expanded its offerings to include moisture-wicking apparel, including shirts and hats, under the MOUNTAIN ARMOR mark:





32.     Defendant offers, sells, and promotes its MOUNTAIN ARMOR apparel through its website, http://www.mtnarmor.com/swag/, and, like Under Armour, promotes its apparel on the Internet, specifically, via social media, including Facebook (https://www.facebook.com/MountainArmor):



33.     Under Armour has worked to resolve this matter with Defendant for over two years, but Defendant has refused to address Under Armour's concerns and to stop trading on Under Armour's goodwill and marks.

34.     On September 5, 2018, Under Armour sent Defendant a letter advising it of Under Armour's rights and asking that Defendant stop using MOUNTAIN ARMOR and any other marks comprised of or containing ARMOR, ARMOUR, or any variations thereof in connection with apparel, including its hats and shirts.

35.     Under Armour's in-house counsel spoke to Defendant's prior counsel over the phone in around September 2018, during which the parties discussed options for resolution. Under Armour's in-house counsel followed up numerous times to try to resolve this matter, but was informed in December 2018 that the counsel Under Armour previously communicated with no longer represented Defendant.

36.     After not hearing from Defendant, and with Defendant's infringing use of MOUNTAIN ARMOR for apparel continuing, Under Armour followed up directly with Defendant in April 2020, this time through outside counsel.  After several follow-up emails, Defendant responded to Under Armour's counsel in September 2020 asserting that Under Armour could not own the word "armo[u]r" because it is a word in the English language.

37.     Under Armour responded in January 2021 by explaining its legal position, namely, that "[t]he fact that something is a word doesn't mean it cannot be a trademark" and "[i]t is a fallacy that a 'common' word found in the dictionary cannot be a trademark."  2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 11:11 (5th ed. June 2021).  In so doing, Under Armour cited to other words that have since become strong trademarks, including AMAZON, APPLE, NIKE, and SHELL.  Under Armour reiterated its request that Defendant

stop using MOUNTAIN ARMOR for apparel in its January 2021 response, but Defendant has not responded, thus necessitating this lawsuit.

38.     With full knowledge of Under Armour's objections and rights, Defendant continues to use its MOUNTAIN ARMOR mark in connection with apparel.  As such, Defendant has acted knowingly, willfully, in reckless disregard of Under Armour's rights, and in bad faith.

## INJURY TO UNDER ARMOUR AND THE PUBLIC

39.     Defendant's unauthorized use of the MOUNTAIN ARMOR mark is likely to cause confusion, mistake, and deception as to the source or origin of Defendant's apparel products, and is likely to falsely suggest a sponsorship, connection, or association between Defendant, those products, and/or its commercial activities relative to those products with Under Armour.

40.     Defendant's unauthorized use of the MOUNTAIN ARMOR mark is likely to dilute the distinctiveness and value of Under Armour's famous UNDER ARMOUR mark.

41.     Defendant's acts, described above, have damaged and irreparably injured and, if permitted to continue, will further damage and irreparably injure Under Armour and its ARMOUR Marks.

42.     Defendant's acts, described above, have irreparably injured, and, if permitted to persist, will continue to irreparably injure the public, who has an interest in being free from confusion, mistake, and deception.

**FIRST CLAIM FOR RELIEF**
**Trademark Infringement Under**
**Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)**

43.      Under Armour repeats and realleges each and every allegation set forth in

Paragraphs 1 through 42 of this Complaint.

44.      Without Under Armour's consent, Defendant has used and continues to use in

commerce reproductions, copies, and colorable imitations of Under Armour's registered

ARMOUR Marks in connection with the offering, distribution, and advertising of apparel.  These

actions are likely to cause confusion, or to cause mistake, or to deceive, in violation of Section

32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

**SECOND CLAIM FOR RELIEF**
**Trademark Infringement, False Designation**
**of Origin, Passing Off, and Unfair Competition**
**Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)**

45.      Under Armour repeats and realleges each and every allegation set forth in

Paragraphs 1 through 44 of this Complaint.

46.      Defendant's actions, as described above, are likely to cause confusion, or to cause

mistake, or to deceive as to the origin, sponsorship, or approval of Defendant, its products,

and/or commercial activities by or with Under Armour.  Defendant's actions thus constitute

trademark infringement, false designation of origin, passing off, and unfair competition in

violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

**THIRD CLAIM FOR RELIEF**
**Trademark Dilution Under Section**
**43(c) of the Lanham Act, 15 U.S.C. § 1125(c)**

47.      Under Armour repeats and realleges each and every allegation set forth in

Paragraphs 1 through 46 of this Complaint.

48.     Under Armour's UNDER ARMOUR mark is famous, as that term is used in 15 U.S.C. § 1125(c), and was famous before Defendant's first use of MOUNTAIN ARMOR based on, among other things, the inherent distinctiveness and federal registration of Under Armour's UNDER ARMOUR mark and the extensive nationwide use, advertising, promotion, and recognition of that mark.

49.     Defendant's actions, as described above, are likely to dilute the distinctive quality of Under Armour's famous UNDER ARMOUR mark by blurring in violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c), as amended by the Trademark Dilution Revision Act of 2006.

## FOURTH CLAIM FOR RELIEF
### Trademark Infringement Under
### Md. Code Bus. Reg. § 1-414 *et seq.*

50.     Under Armour repeats and realleges each and every allegation set forth in Paragraphs 1 through 49 of this Complaint.

51.     Defendant's uses, without the consent of Under Armour, of reproductions and/or colorable imitations of Under Armour's registered ARMOUR Marks in connection with the sale, offering for sale, and/or advertising of goods or services, are likely to cause confusion, or to deceive as to the origin of the goods or services, and thus constitute trademark infringement in violation of Md. Code Bus. Reg. § 1-414 *et seq*.

52.     Defendant's reproductions and/or colorable imitations of Under Armour's registered ARMOUR Marks, and application of those reproductions and/or colorable imitations to Defendant's advertising, labels, prints, receptacles, signs, or wrappers that are intended to be used with goods or services and/or in conjunction with the sale or other distribution of goods or

services in Maryland, constitute trademark infringement in violation of Md. Code Bus. Reg.

§ 1-414 *et seq.*

## FIFTH CLAIM FOR RELIEF
### Trademark Infringement, False Advertising, and Unfair Competition
### <u>Under Maryland Common Law</u>

53.     Under Armour repeats and realleges each and every allegation set forth in

Paragraphs 1 through 52 of this Complaint.

54.     Defendant's actions, as described above, are likely to cause confusion, or to cause

mistake, or to deceive as to the affiliation, connection, or association of Defendant with Under

Armour, or as to the origin, sponsorship, or approval of Defendant, its products, and/or its

commercial activities by or with Under Armour such that Defendant's acts constitute

infringement of Under Armour's proprietary rights in its ARMOUR Marks, misappropriation of

Under Armour's goodwill in those marks, and unfair competition under Maryland common law.

55.     Defendant's actions, as described above, constitute false and misleading

descriptions and misrepresentations of fact in commerce, which, in commercial advertising and

promotion, materially misrepresent the nature, characteristics, and qualities of Defendant's

products and constitute false and deceptive advertising under Maryland common law.

## <u>JURY DEMAND</u>

Pursuant to Fed. R. Civ. P. 38, Under Armour respectfully demands a trial by jury on all

issues properly triable by a jury in this action.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Under Armour respectfully requests that this Court enter judgment in its

favor on each and every claim for relief set forth above and award it relief including, but not

limited to, the following:

A.     An Order declaring that Defendant's uses of the MOUNTAIN ARMOR mark for apparel infringe Under Armour's ARMOUR Marks, dilute Under Armour's UNDER ARMOUR mark, and constitute unfair competition under federal and/or state law, as detailed above;

B.     A permanent injunction enjoining Defendant and its employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, and all persons in active concert or participation with any of them:

1.     From using, registering, or seeking to register the MOUNTAIN ARMOR mark any form, including in connection with any other wording or designs, on apparel, headwear, and any similar products likely to be confused with Under Armour and from using any other marks, logos, designs, designations, or indicators that are confusingly similar to any of Under Armour's ARMOUR Marks and/or dilutive of Under Armour's UNDER ARMOUR mark in connection with such products;

2.     From representing by any means whatsoever, directly or indirectly, that Defendant, any products or services offered by Defendant, or any activities undertaken by Defendant, are associated or connected in any way with Under Armour or sponsored by or affiliated with Under Armour in any way;

3.     From assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs C(1)-(2);

C.     An Order directing Defendant to destroy all apparel, headwear, and similar products that contain or bear Defendant's MOUNTAIN ARMOR mark and related packaging, signage, advertisements, promotional materials, and/or any other materials

D.     An Order directing that, within thirty (30) days after the entry of the injunction, Defendant file with this Court and serve on Under Armour's attorneys a report in writing and

under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

  E. An Order requiring Defendant to account for and pay to Under Armour any and all profits arising from the foregoing acts, and increasing such profits, in accordance with 15 U.S.C. § 1117 and other applicable laws including, but not limited to, Md. Code Bus. Reg. § 1-414 *et seq.*;

  F. An Order requiring Defendant to pay Under Armour damages in an amount as yet undetermined caused by the foregoing acts and trebling such damages in accordance with 15 U.S.C. § 1117 and other applicable laws including, but not limited to, Md. Code Bus. Reg. § 1-414 *et seq.*;

  G. An Order requiring Defendant to pay Under Armour all of its litigation expenses, including reasonable attorneys' fees and the costs of this action pursuant to 15 U.S.C. § 1117 and other applicable laws;

  H. An Order requiring Defendant to pay Under Armour punitive damages for trademark infringement and unfair competition under Maryland common law; and

  I. Other relief as the Court may deem appropriate.

Dated:  August 12, 2021                     Respectfully submitted,

                                            _/s/ Douglas A. Rettew_____
                                            Douglas A. Rettew (29815)
                                            Anna B. Naydonov (21144)
                                            Patrick J. Rodgers (21148)
                                            FINNEGAN, HENDERSON, FARABOW,
                                              GARRETT & DUNNER LLP
                                            901 New York Avenue, NW
                                            Washington, D.C. 20001-4413
                                            (202) 408-4000 (phone)
                                            (202) 408-4400 (fax)
                                            Email: doug.rettew@finnegan.com
                                            Email: anna.naydonov@finnegan.com
                                            Email: patrick.rodgers@finnegan.com

                                            **_Attorneys for Plaintiff_**
                                            **_Under Armour, Inc._**